NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Karen BORN,

    Plaintiff,

v.

THE ABERDEEN POLICE DEPT., et al.,

    Defendants.

Civ. No. 09-1602

OPINION & ORDER

THOMPSON, U.S.D.J.

## I.  Introduction

This matter comes before the Court upon Plaintiff's Motion to Amend the Complaint [docket # 56], Plaintiff's Motion for Reconsideration and to add Amendments to the Complaint [60], and Defendants' Second Motion for Summary Judgment [66].  The motions have been decided upon the parties' written submissions and without oral argument.  For the reasons given below, Plaintiff's Motion to Amend Complaint is GRANTED, Plaintiff's Motion for Reconsideration is DENIED, and Defendants' Motion for Summary Judgment is GRANTED.

## II.  Background

Plaintiff's lawsuit is based on a litany of allegations against various members of the Aberdeen Police department, ranging in time from 1999 through the present.  They include claims for malicious prosecution, defamation, and retaliation against the exercise of First Amendment rights.

Plaintiff's earliest allegation is that she was falsely arrested in 1999.  She alleges that thereafter she was issued four false parking tickets.  She further alleges that the police tried to

have her driver's license revoked and that over the course of 2000 and 2001 she was issued 30 more parking tickets. Then from 2000 to 2002 she was allegedly charged with four separate offenses, and the police allegedly threatened to commit her to a mental facility if she "walked or drove down the street." She further alleges that in 2003 she complained against Defendant Sousa and that Sousa retaliated by arresting her on an invalid warrant. She alleges that from 2000 to 2003 the police stalked her and did nothing about her complaint letters. She also alleges that the police actively tried to break up her relationship with her boyfriend.

Plaintiff apparently left the Aberdeen area from 2003 to 2007. When she returned in 2008, she was allegedly again subject to stalking and false arrests. Plaintiff filed a tort claim against the police in January 2009, and she alleges that several episodes after that date are retaliation for filing that complaint. Specifically, she alleges that the police stalked her on July 7, 2009 and August 16, 2009, and that on July 28, 2009 she was illegally taken into custody.

Plaintiff's claims concerning these incidents have all already been dismissed. The Court dismissed several claims on September 8, 2009 and the remaining claims on December 7, 2009. However, just before the Court filed its Order of December 7, 2009, Plaintiff submitted a motion to add new allegations to her complaint concerning events that took place on November 21, 2009. Plaintiff's new allegations are that she called 911 and complained to the police that her mother had assaulted her. When the police arrived, Plaintiff locked herself in her car and would not come out for several hours. Based on this determination, Defendant police officers took Plaintiff into custody.

Then, on December 28, 2009, Plaintiff submitted another motion. In this motion, Plaintiff requests that the Court reconsider its Order of December 7 and give her leave to add further claims to her Complaint concerning the alleged events of July 27, 2009.

### III. Plaintiff's Motion to Amend

Fed. R. Civ. P. 15(a) requires that leave to amend a complaint "be freely given when justice so requires." However, a court may deny a motion to amend the complaint "if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party" or if the proposed amendment "fails to state a cause of action." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001) (citations omitted).

Plaintiff seeks to amend her complaint to add allegations of conduct that occurred on November 21, 2009. Plaintiff alleges that she called the police because her mother was physically abusing her. When the police showed up, they made a report of the situation, and Plaintiff locked herself in her car to protect herself from her mother. The police remained on the property, and after a couple of hours, Plaintiff exited her car, whereupon she was taken into custody and taken to Riverview Hospital. Plaintiff further alleges that the police refused to arrest her mother and that the police had no legitimate reason to take her into custody. If these facts are accepted as true, they would support a plausible claim for deprivation of liberty. Since Defendants have shown no prejudice in allowing this amendment, the Court will grant Plaintiff's motion to add these allegations to her Complaint. The legal viability of the deprivation of liberty claim will be discussed further below.

Plaintiff's proposed amendments do not, however, state a claim for retaliation against the exercise of First Amendment freedoms. The alleged protected activity at issue in this lawsuit are (1) the filing of a state law tort claim in February or January of 2009, and (2) the filing of this lawsuit in April 2009. As the Court explained in its order of December 7, the lack of temporal proximity between filing those lawsuits and these new allegations do not support an inference that the alleged actions were retaliatory.

### IV.     Plaintiff's Motion for Reconsideration and adding additional claims

In order to prevail on a motion for reconsideration, the movant must show one of three things: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995)).

Plaintiff has not shown that any of these conditions exist.  Her motion for reconsideration merely reiterates the same arguments she made earlier in her opposition to the Defendants' first summary judgment motion.  The Court already considered her arguments regarding the continuing violation doctrine and held that the doctrine did not apply.  The Court also considered the temporal proximity between Plaintiff's actions of filing two lawsuits against Defendants and the alleged retaliatory actions that Defendants took this summer.  The Court held that neither temporal proximity nor evidence of antagonism suggested that the actions were retaliatory.

By this same motion, Plaintiff also seeks to add new claims for violations of her Fourth Amendment rights. This aspect of the motion will be denied as futile.  In these proposed new amendments, Plaintiff alleges that the police violated her rights when they took her into custody against her will on July 27, 2009.  However, as the Court explained in its earlier order of December 7, the police were acting within the scope of their qualified immunity when they did so.  The Court specifically grounded its analysis in the "exigent circumstances" exception to the Fourth Amendment warrant requirement.  *See Mincey v. Arizona*, 437 U.S. 385, 392 (1978).  Therefore, the July 27, 2009 incident did not violate Plaintiff's Fourth Amendment Rights.

Plaintiff's allegations that the November 21, 2009 incident violated her Fourth Amendment rights fails for the same reason, as will be explained presently.

### V.    Defendants' Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

Defendants assert that they should not have to face suit because of the doctrine of qualified immunity. In determining whether qualified immunity exists, the Court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). If it would not be clear that the alleged conduct is unlawful, then the officer has immunity from suit. In conducting this analysis, it may be helpful for the Court first to examine the allegations in the Complaint and determines whether "a violation could be made out on a favorable view of the parties' submissions." *Saucier,* 533 U.S. at 201. However, this "first step" in qualified immunity analysis is no longer mandatory. *Pearson v. Callahan*, 129 S.Ct. 808, 818-19 (2009). It is preferable to resolve the issue of qualified immunity as early as practicable in order to avoid the costs of protracted litigation, which include not only the financial costs of litigation but also "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Mitchell v.*

*Forsyth*, 472 U.S. 511, 526 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)). "[E]ven such pretrial matters as discovery are to be avoided if possible." *Id.* (citing *Harlow*, 457 U.S. at 817).

Based on the evidence presented, the Court concludes that there is no genuine dispute that a reasonable officer would have concluded that it was not unlawful to take Plaintiff into custody under the circumstances presented on November 21, 2009. A mental health screener, William Adkisson, arrived on the scene, observed Plaintiff, and spoke to Plaintiff's mother. Adkisson was aware that Plaintiff had previously been diagnosed with mental health problems. Based on these factors, Adkisson determined that Plaintiff was dangerous to herself and others, and he told the police officers that she should be transported to Riverview Hospital for an evaluation. Additionally, Plaintiff's mother told the officers that Plaintiff had been acting violently and that Plaintiff was "out of her mind." Based on these undisputed facts, a reasonable officer would have believed that, under N.J. Stat. Ann. § 30:4-27.6(a) or (b), it was lawful to take Plaintiff into custody. A reasonable officer would not have believed that taking Plaintiff into custody violated either her Fourth Amendment right against unlawful seizure or her Fourteenth Amendment liberty rights.

In her opposition, Plaintiff simply reiterates many of the above facts as well as the allegations in her complaint. She argues that the police are not entitled to qualified immunity because the police took the actions they did for the sole reason of depriving Plaintiff of her liberty. However, she presents no evidence that the police officers acted with this intent, and in any event, an official's subjective intent is irrelevant to the issue of qualified immunity. *See, e.g.*, *Wyatt v. Cole*, 504 U.S. 158, 165-66 (1992).

6

Since the officers acted within the scope of their qualified immunity on November 21, 2009, Plaintiff's claims based on that episode must be dismissed.  As was explained above, Plaintiff's claims in regards to all her other allegations have previously been dismissed by this Court.

### VI.    Conclusion

For the foregoing reasons, it is ORDERED, this 9th day of March, 2010, that Plaintiff's Motion to Amend [56] is GRANTED IN PART; and

It is further ORDERED that Plaintiff's Motion for Reconsideration and to add amendments to the Complaint [60] is DENIED; and

It is further ORDERED, that Defendants' Motion for Summary Judgment [66] is GRANTED; and

It is further ORDERED that Plaintiff's Complaint and all amendments thereto are DISMISSED; and

It is further ORDERED that this case is CLOSED.

>  */s/  Anne E. Thompson*
>       ANNE E. THOMPSON, U.S.D.J.